BRAGG v. LOCKHART.

Where lands are partitioned and the lines are actually run and marked on the ground, the courses and distances corresponding with the marked lines, will control a call for the corner of another survey, particularly where the corner of such other survey is not well established and marked on the ground; and subsequent purchasers will be bound by the actual survey, particularly where the lines are again run out, at such subsequent purchase.

The fact that the plaintiff acquiesced in the purchase by the defendant, setting up no claim for himself, and that those under whom the plaintiff claims, so far as appears, made no pretensions to the land in dispute, are circumstances which militate against the equity of the plaintiff's claim; but they are not of a character to defeat his legal rights.

Appeal from Washington. From the facts of this case, it appeared that Wm. Munson, in the year 1831, obtained a deed from the government, for a league of land; that from its south-west corner, the south-western line run north, 80° east, 1350

varas; thence south 10° east, 1880 varas, to the corner of Gibson Kuykendall's land; thence north, 80° east, &c., &c.; that in the same year, the said Munson leased for one thousand years, to Isaac N. Charles, eleven and one-half labors of this league, the line in this conveyance, from the south-west corner, running north, 80° east, 835 varas; thence south, 10° east, 1880 varas, to a stake; thence north, 80° east, &c., &c.

Isaac N. Charles having departed this life, the land procured from Munson was partitioned among his heirs; one of the shares was styled lot No. 8. It was assigned to James Charles, and its boundaries alone were involved in this controversy. The south-west line of the lot No. 7 extended on the south-west line of the one-half league 173 poles, to a corner with a hackberry, as a witness tree. This, in the partition, was the south-west corner of lot No. 8, and it extended thence, on the south-west line of the half league, or north, 80° east, 54 poles, to the corner of the half league; thence south, 10° east, and following the course of the original survey of the league, 306½ poles, to the south corner of the half league; thence north, 80° east, 30 poles; thence north, 498 poles; thence west, 140 poles; thence south, 215 poles, to the south-west corner of the lot, and embracing an area of 284 acres.

In 1843, James Charles sold to Benjamin Green one hundred and four acres off the south end of this lot, the line in his deed and about which this dispute arises, running south 10° east, 302½ poles, to a stake, for Charles, south-west corner of the said half league.

In September, 1844, James Charles sold the remainder of lot No. 8, to E. D. Little and John H. Day. The lines of their deed were described by giving the metes and bounds of lot No. 8, with the reservation that Green was to have one hundred and four acres off the south end of the lot. Little and Day sold to Power; and Power to the said Little and Wm. S. Day; and the whole interest having been subsequently conveyed to Wm. S. Day, he and his wife sold to the plaintiff, all of these deeds following the description of the land, in the

20

deed from Charles to E. D. Little and John H. Day. It was proven on the trial, by O. H. P. Garret, District Surveyor, and another witness, that the land in controversy was not embraced within the bounds of lot No. 8, as it was surveyed at the time of the partition; and that the lines of the lot, as then run, are the same as those made by the survey under the order of the Court; that the plaintiff purchased under an actual survey which did not include the land in controversy; that the land lay in the prairie, and the corners, of the Kuykendall league, and of the Stephens league were in the prairie, and had been establisded by Garret, the witness; that the lines, as run at the time of the purchase by the plaintiff, were the same as those run under order of the Court, and as those made at the time of the partition. It was proven that plaintiff was apprised of the negotiations by the defendant, for the purchase of the litigated land; that he advised the purchase, setting up no claim for himself; that one of the former owners of the plaintiff's tract, did not, during his ownership, lay any claim to the land in dispute, and that taxes were paid, on the land, to another former owner, who was then Assessor and Collector.

Various instructions were given, at the instance of the plaintiff. The most material of which was, that the calls in a deed, when sufficiently certain and for corners, objects and lines which can be found, control both courses and distances.

It was charged for defendant, among other matters, that the plaintiff must recover upon the strength of his own title; that, although the land might be a part of the Munson league, yet, if not a part of lot No. 8, and not embraced in plaintiff's field notes, he could not recover; and that, as the plaintiff bought the land by an actual survey, he was bound by that survey.

*Lewis & Barber*, for appellant, cited Helm v. Small, Hard. R. 369; Doe v. Thompson, 5 Cow. R. 371; Penderson v. Love, 3 Tex. R. 60; 2 Johns. R. 37; 15 Id. 471; 1 Hayw. R. 22; Id. 252; Id. 378; Patterson v. Bradford, Hard. R. 101; 8 Johns. R. 368; Jackson v. Livingston, 15 Johns. R. 172, 173.

*Giddings* and *J. Willie,* for appellee, cited Hubert v. Bartlett, 9 Tex. R. 97.

HEMPHILL, CH. J.   It is contended by the plaintiff, that, as lot No. 8 calls for the south corner of the half league, and as that, by the calls of the original deed, is Kuykendall's corner, it should embrace all the land lying between lot No. 7, and the Kuykendall and Stephens leagues ; and that the plaintiff, being entitled to all of the lot No. 8, except the one hundred and four acres sold to Green, is consequently entitled to the land within those limits—this being the land which is in controversy.   The objection to this is, that though there is a call, in the original deed to Munson, for Kuykendall's corner, yet there is no evidence that this corner was notorious or established at the time of the original survey, or in fact, that it was ever known until established under an order of survey in this suit.   It was in the prairie, and there was no visible monument or mark for its designation.   It was not more notorious, in fact, than the course and distance of the survey.   Both were ideal, and one could be traced with as much ease and certainty, as the other ; and one afforded as much evidence of the actual location or survey of the league, as did the other.   But, whatever may be the true mode of surveying Munson's south-western line—and it is not necessary that it should be determined— yet, it is urged that the land obtained by Jas. Charles, being lot No. 8, was run out at the time of the partition, with actual metes and bounds, and did not touch Kuykendall's corner, nor embrace the land in suit; and that, at the time of the purchase by the plaintiff, the lot was again surveyed, pursuing the lines as made seven years before, at the time of the partition, and not extending to the land now claimed by plaintiff; that although the south corner of the one-half league is called for, in the partition survey, yet that the commissioners did not thereby intend to make Kuykendall's corner the south corner of lot No. 8, nor that it should be fixed at any other place than where it was reached by course and distance, and established by

their actual survey; that this was the land apportioned to James Charles; that he was entitled only to this and could sell no more; that the metes and bounds of this lot, when assigned to James Charles, having been fixed and ascertained, and they having been again established at the time of the purchase by the plaintiff, he could not be mistaken as to their extent, nor go beyond their limits.

These positions, when applied to the circumstances of this case, cannot be successfully controverted. The lines of the lot, at the time of the plaintiff's purchase, were notorious. They had been established for years; and they were again fixed by an actual survey; and by that he must be bound.

The land, in litigation, is nearly equal to the whole amount of the lot No. 8; and it is very clear that the commissioners did not intend that the distributee should have nearly twice as much as was allotted to him and as was included in the actual survey. And it is equally clear that the plaintiff, purchasing one hundred and eighty acres by the metes and bounds of an actual survey, cannot so extend them as to embrace more than four hundred acres. It is not a material circumstance in the case, that the defendant's title, as deduced from Green, is defective. He is in possession; and whether his title be good or bad is immaterial, so long as the plaintiff shows no right. The facts that the plaintiff acquiesced in the purchase by the defendant, setting up no claim for himself, and that those under whom the plaintiff claims, so far as appears, made no pretensions to the land in dispute, are circumstances which militate against the equity of the plaintiff's claim; but they are not of a character to defeat his legal rights. The facts in relation to possession on the one part, and acquiescence on the other, are not sufficiently proven to require comment upon the effect of acquiescence and laches in the prosecution of rights.

Upon the whole, we are of opinion that there is no error in the judgment, and that the same be affirmed.

Judgment affirmed.